CHICAGO—FIRST DISTRICT—MARCH, 1915.    629

Women's Catholic Order of Foresters v. Hill et al., 191 Ill. App. 629.

## Women's Catholic Order of Foresters, Appellee, v. Mary Hill and Jennie Oetzman, Mary Hill, Appellant.

### Gen. No. 20,258.   (Not to be reported in full.)

Appeal from the Superior Court of Cook county; the Hon DENIS E. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1914. Reversed and remanded. Opinion filed March 11, 1915. Additional opinion filed April 22, 1915.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

630    APPELLATE COURTS OF ILLINOIS.

Women's Catholic Order of Foresters v. Hill et al., 191 Ill. App. 629.

## Statement of the Case.

Bill of interpleader filed by the Women's Catholic Order of Foresters against Mary Hill and Jennie Oetzman, defendants, to determine the ownership of a fund of $1,000 admitted by plaintiff to be due under an endowment certificate issued by it to Mrs. Agnes C. Van Wazer, mother of the defendants.

In 1896, Mrs. Van Wazer became a member of one of the subordinate lodges of the plaintiff, and an "endowment certificate" for $1,000 was issued to her, payable to her husband. Her husband dying, a new certificate was issued, at her request, payable to her daughter, Mary Van Wazer, now Mrs. Hill. At the time this was done Mrs. Van Wazer told the secretary of defendant that her daughter Mary "had always done what was right," while the others had not; that "Mary was the only one of the family that was deserving of the insurance," and was the only one that she (Mrs. Van Wazer) "could trust;" that she (Mrs. Van Wazer) "wanted $100 for masses out of the money," and "a headstone laid at her grave," and that she wanted Mary to attend to these things after her death. Mary agreed to do so. Mrs. Van Wazer then said: "Now Mary, if I cannot pay the dues, you will have to pay them, for the money is going to be yours:" and to this Mary also assented. After this arrangement was made, Mary paid, out of her own money, most of the dues as they accrued during her mother's lifetime.

In September, 1911, the certificate was placed by Mrs. Van Wazer in a safety deposit box, rented for that purpose by Mrs. Hill at her mother's request and it remained there until the death of Mrs. Van Wazer, on February 12, 1913.

Mrs. Van Wazer suffered from chronic asthma for some years before her death, and about a week before her death she had an attack of bronchial pneumonia. During this last illness, her son, Peter Van Wazer, and her daughter Jennie, now Mrs. Oetzman, were living

at the home of the insured.   Three days before Mrs. Van Wazer died she told the secretary that she would like to change her policy "to Jennie without Mary knowing it," and asked how this could be done.   The by-laws of the society provided that any member in good standing may surrender her certificate at any time and have a new one issued, payable to such beneficiaries as she may direct by indorsing such surrender and request on the back of the certificate.   The by-laws also provide that if the certificate be lost, a new certificate "payable to the same or a new beneficiary" will be issued "upon making an affidavit of the facts in the case satisfactory to the high secretary."   The recording secretary suggested that the latter course be followed, and told Mrs. Oetzman, who was present, to go to the high court and get a blank form of affidavit to the effect that the certificate was lost.   Both the insured and Mrs. Oetzman knew that the certificate was not lost, but was in the possession of Mrs. Hill, and was payable to her.   Mrs. Oetzman went to the main office of the association and obtained from the high secretary a printed blank form of affidavit as to the loss of the certificate.   In the forenoon of February 10, 1913, a notary who had been summoned to the home of the insured filled in the blanks in the affidavit, which stated that the insurance certificate was lost; that the insured had made diligent search to find it but could not; that she desired a new certificate to be issued, payable to her daughter, Jennie Oetzman.   Mrs Oetzman and Peter Van Wazer testified that this affidavit was then signed by the insured and by them as witnesses.   The notary did not testify.

This affidavit was offered in evidence, and the original is a part of the record on appeal.   It is dated February 10, 1913, but purports to have been sworn to on February 11, 1913.   The signature of the insured is a series of scrawling, irregular marks, bearing not the slightest resemblance to her signature as she wrote it in April, 1910 (which is also in the record).

632    APPELLATE COURTS OF ILLINOIS.

Women's Catholic Order of Foresters v. Hill et al., 191 Ill. App. 629.

Mrs. Oetzman and Peter Van Wazer testified that their mother, who was then between sixty and seventy years of age, and was very sick, was sitting in a chair at the time this affidavit was signed; that the notary read the whole affidavit to her and asked her if she knew what she was doing, and if she was doing it willingly, to which she replied in the affirmative. The attending physician testified that the physical and mental condition of Mrs. Van Wazer at that time was such that he doubted if she could understand the purpose of such an affidavit.

The affidavit thus executed was delivered by Mrs. Oetzman the same day to the recording secretary, who, after submitting it to a meeting of the court held the same afternoon, mailed it to the officers of the high court. The latter received it on the morning of February 11th, and on February 13th (after the death of the insured), a new certificate payable to Mrs. Oetzman was issued, and was delivered to her several days later. The only dues or assessments paid by Mrs. Oetzman were dues, amounting to $3.15, which accrued about a week before the death of the insured. Mrs. Hill was ill at her home at that time, and at no time during the last illness of the deceased did Mrs. Oetzman or Peter Van Wazer communicate the fact of their mother's illness to Mrs. Hill, and Mrs. Hill, had no knowledge of that fact, or of the fact that any change had been made in the certificate, until after her mother's death.

From a decree awarding the fund to Mrs. Oetzman, Mrs. Hill, the other defendant appeals.

O'DONNELL & O'DONNELL, for appellant, Mary Hill.

THOMAS G. McELLIGOTT, for appellee Jennie Oetzman.

ADOLPH H. EASTER, for appellee, Women's Catholic Order of Foresters.

Women's Catholic Order of Foresters v. Hill et al., 191 Ill. App. 629.

MR. PRESIDING JUSTICE FITCH delivered the opinion of the court.

## Abstract of the Decision.

1. INSURANCE, § 825*—*when substitution of new beneficiary invalid.* Where the insured has once designated an eligible beneficiary and caused a certificate to be issued payable to such beneficiary and the latter has paid dues upon the faith of the certificate in pursuance of an agreement to that effect with the insured, the beneficiary so named acquires a beneficial interest in the certificate and the substitution of another beneficiary without the knowledge of the one first named is fraudulent and will not be permitted, in a court of equity, to defeat the rights of the beneficiary first named.

2. INSURANCE, § 857*—*when proceeding to determine ownership of proceeds of certificate equitable.* A bill of interpleader by an insurer to determine the ownership of the proceeds of a life insurance certificate as between the beneficiary named in the certificate first issued and the one substituted in a later certificate is a suit in equity in which equitable as well as legal rights will be recognized and protected.

3. INSURANCE, § 825*—*when procuring issue of new certificate fraud.* By means of a false affidavit that the original certificate had been lost, the issuance of a new certificate was secured by the insured from the insurer in which a person assisting in securing its issuance and knowing the facts was substituted for the original beneficiary, who had paid the dues according to agreement with the insured. It was *held* that the issuance of the certificate was a fraud upon both the insurer having no knowledge of the fraud and upon the original beneficiary and that the new beneficiary knowingly participating in the fraud would not be allowed to profit thereby in a court of equity.

4. WITNESSES, § 107*—*when beneficiary under insurance certificate not incompetent to testify to conversation with deceased insured.* On a bill of interpleader by an insurer to determine the right to the proceeds of a life insurance certificate as between two daughters of the insured, one of whom claimed as beneficiary under the original certificate and the other as substituted beneficiary under a certificate issued later, both of the claimants are competent witnesses to testify in their own behalf as to any conversation with the insured deceased which is otherwise competent, relevant or material.

### ON ADDITIONAL OPINION.

5. INTERPLEADER, § 19*—*when attorney's fees allowable.* While a court of chancery in the exercise of its general equity powers cannot allow solicitor's fees to the party filing a bill of interpleader,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

where the by-laws of an interpleading beneficial society expressly provided that when more than one claimant demands the endowment benefit provided for, there shall be deducted from such benefit "all court costs, reasonable attorney's or solicitor's fees, and all actual expenses incurred by this order in determining who should be paid said benefits", a reasonable solicitor's .fee may be allowed, provided the complainant acts in good faith in filing the bill.

6. INTERPLEADER, § 19*—*limitation on attorney's fees allowable.* Where the parties by their contract, stipulate that a reasonable solicitor's fee may be deducted or allowed in case an interpleader becomes necessary, the fee so allowed should not include the value of any services beyond the mere preparation and filing of the bill, attending to the service of process, and the preparation and entry of an interlocutory order finding that the bill was properly filed and requiring the complainants to interplead.