## Pearl Baughman et al., Appellees, v. Rhoda Ann Baughman et al., Appellants.

1. PARTITION, § 118*—*when complainant not entitled to solicitor's fee.* In a suit for partition, *held* that the proceeding was not an amicable one and that the defenses interposed were not simply formal, frivolous or vexatious but were substantial and in good faith, with the views on defendants' part of protecting their interests and securing their just proportion of the properties, and that, consequently, it was inequitable that the decree therein should require defendants to pay any part of complainant's solicitor's fee.

2. INFANTS, § 38*—*eligibility of solicitor to appointment as guardian ad litem.* The solicitor for a party to a suit who is not of legal age may be also appointed guardian *ad litem* for such party.

3. INFANTS, § 41*—*right of guardian ad litem to act as his own solicitor.* A guardian *ad litem* who is a lawyer may act as his own solicitor.

4. INFANTS, § 45*—*attorney, acting as guardian ad litem and solicitor, as not entitled to fees in each capacity.* *Semble,* that an attorney who acts as both guardian *ad litem* and solicitor for a minor party is not entitled to an allowance of fees in each capacity.

5. INFANTS, § 45*—*when person acting as guardian ad litem and solicitor will, on appeal, be deprived of allowance for services as guardian ad litem.* One to whom a joint compensation has been allowed for acting as both solicitor and guardian *ad litem* for a minor litigant, will not be permitted on appeal, where an allowance in such dual capacity is held improper, to retain such allowance for his services as guardian *ad litem.*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Baughman v. Baughman, 215 Ill. App. 620.

Appeal from the Circuit Court of Christian county; the Hon. THOMAS M. JETT, Judge, presiding. Heard in this court at the April term, 1919. Reversed. Opinion filed October 21, 1919. *Certiorari* denied by Supreme Court (making opinion final).

LESLIE J. TAYLOR and W. B. MCBRIDE, for appellants; JAMES M. TAYLOR, of counsel.

J. E. HOGAN, for appellees.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

Sherman E. Baughman died intestate September 8, 1916, at his residence in the City of Taylorville, Christian county, Illinois. He had been twice married, his second marriage having taken place several years after the death of his first wife. By his first wife, he had six children who survived him at the time of his death. He was also survived by his second wife, Miranda E. Baughman, and one child, Pearl Baughman, appellees. Before his second marriage, he drew up an informal antenuptial contract which was signed by appellee, Miranda Baughman, but which does not appear to have been executed by himself and was decreed to be invalid. During his last illness, he started to arrange for a settlement of his property among his children by means of a contract and had advised and consulted with an attorney for that purpose, but the settlement was never consummated. At the time of Sherman E. Baughman's death, his daughter by his second marriage, Pearl Baughman, was a minor, who would come of age in July, 1917. When he was seeking to settle his affairs by an agreement between his wife and his children during his last illness, Lorne Bulpitt, a son-in-law of Mrs Miranda Baughman, who had married a daughter born to her through a former marriage, on behalf of his mother-in-law and his sister-in-law, Pearl Baughman, advised with Mr. John E. Hogan with reference to their rights in the property

of Sherman E. Baughman, in the event of his death. After the death of Sherman E. Baughman, Warren Baughman, one of his sons by his first wife, interviewed Mr. Hogan with a view of employing him to represent the interest of the children by the first marriage and was told by Mr. Hogan that he had already advised with the other parties.

After the death of Sherman E. Baughman, by arrangement between his widow and the children of his first wife, Ernest Hoover and Warren Baughman were appointed coadministrators, Ernest Hoover to represent the widow and her daughter Pearl and Warren Baughman to represent the interests of the children by the first marriage. Ernest Hoover employed Mr. Hogan as his attorney and Warren Baughman employed Mr. W. B. McBride and Mr. L. J. Taylor as his attorneys in administration of the estate.

On September 28, 1916, a bill for partition was filed by Pearl Baughman by her next friend, Lorne Bulpitt, as complainant, in which her mother, Miranda Baughman, the heirs of Sherman E. Baughman by his first wife, the said administrators of the estate of Sherman E. Baughman, deceased, and several tenants were made parties defendant. Upon the filing of said bill for partition, appellants employed William M. Provine as their solicitor to represent their interests in the suit for partition and Mr. Provine filed an answer and cross-bill on their behalf. Mr. John E. Hogan, solicitor for the complainant in the bill, was appointed guardian *ad litem* for Pearl Baughman, minor. Miranda E. Baughman employed Mr. George T. Wallace as her solicitor, who prepared and filed her answer to the bill and cross-bill. Before the case was heard, on account of illness and death in his family, Mr. Provine withdrew as solicitor for appellants and they employed Mr. Taylor and Mr. McBride in his place.

In the answer and cross-bill of appellants, it is averred that the bill did not include all the real estate

owned by Sherman E. Baughman at the time of his death and set out several lots and parts of lots in the City of Taylorville and the Village of Mt. Auburn in which Sherman E. Baughman owned undivided interests, and also that certain necessary parties defendant were not made parties to the bill; that the bill incorrectly described the farm land situated in Section 7, Township 14 North, Range 1 West of the 3rd P. M., in that the description included all of Section 7 while, as a matter of fact, a 2-acre tract therein had long since been conveyed and was not the property of Sherman E. Baughman at the time of his death; that by reason of the antenuptial contract, the widow, Miranda E. Baughman, was not entitled to dower; that Miranda. E. Baughman and Pearl Baughman took no interest in the real estate mentioned in the farm land described as Section 7 for the reason that all the purchase price for said section had been furnished by the mother of appellants and that the lands had been purchased by Sherman E. Baughman for their mother and with her money, but taking title in himself and thereby taking title only in trust for her and that upon her death the title passed to appellants in fee simple free from any claim of dower or title by Miranda E. Baughman and Pearl Baughman.

The original bill was thereafter amended so as to correctly describe the lands in said Section 7 by omitting the 2-acre tract therein and also by including the omitted property mentioned in the answer and cross-bill and making additional necessary parties defendant.

A hearing was had upon the issues presented by the amended bill, the answers thereto, the cross-bill, the answers thereto and the replications to the respective answers. Much evidence was introduced by the respective parties. A decree was entered holding that the antenuptial contract was void and that the proof was not sufficient to establish a resulting trust,

and finding that the interests of the parties in the real estate were as set out in the amended bill of complainant. Appellants prayed an appeal to the Supreme Court from this decree, but were unsuccessful in their contentions and the decree was affirmed. *Baughman v. Baughman,* 283 Ill. 55. After the case was remanded to the Circuit Court and redocketed, a petition was had and the real estate set off to the respective parties in accordance with their interests as found by the decree. Thereafter a motion was made by the solicitor and guardian *ad litem* of Pearl Baughman, as complainant, to tax solicitor's and guardian *ad litem's* fees in said cause as part of the costs of the proceedings. Evidence was heard upon this motion and the sum of $2,000 was allowed as a joint fee for the solicitor and guardian *ad litem,* one-seventh of which was to be paid by each of the principal defendants. This order in part is as follows: ''This cause coming on to be heard upon the motion of the solicitor and guardian *ad litem* of complainant, to tax solicitor and guardian *ad litem* fee in said cause; and it appearing to the court that John E. Hogan was solicitor for the complainant and was also by appointment of this court, guardian *ad litem* of the infant complainant, and that the rights and interests of all parties in interest are properly set up in the bill of complainant herein, it is ordered that the sum of $2,000 which the court finds to be a reasonable fee for solicitor's and guardian *ad litem* for complainant, be taxed as part of costs of this proceeding; and it is further ordered that the costs and expenses of this proceeding be paid by the parties in the following proportion, to-wit: * * * and that the same be paid within forty days of this date, and that in default thereof execution issue therefor.''

Appellants objected to the allowance of the taxing of these fees against them and this appeal is from the order allowing the same. The reasons urged why

such fees should not be taxed are, (1) the original bill did not include all the real estate owned by the deceased at the time of his death; (2) it did not correctly describe the real estate owned in said Section 7; (3) all necessary parties not made defendants therein; (4) a substantial defense was made in good faith; (5) the fees for solicitor and guardian *ad litem* cannot lawfully be combined in one fee. From the view we take of this case, it is unnecessary to determine the merits of the first three contentions of appellants.

From the evidence in the record it is apparent that this was not an amicable proceeding. That appellants actually and in good faith believed that their mother furnished the money for the purchase of the lands in Section 7 and that a resulting trust was created thereby cannot be successfully controverted, and that they also believed in the validity of the antenuptial contract in good faith is apparent. In the case of *Hynes v. Jennings,* 262 Ill. 268, the court said: "The question when a court is authorized, under the statute, to tax a fee for complainant's solicitor as costs in a partition suit has frequently been before this court. The rule to be deduced from the decisions is, that when the bill correctly sets up the rights and interests of the parties, and the suit is an amicable one, the statute authorizes the taxing of a fee; but where the complainant's attitude towards the defendants is hostile, so that defendants are required to employ counsel to protect their interests, it would be inequitable to make them also pay complainant's solicitor. Where the bill properly sets up the rights and interests of the parties, defendants cannot defeat the assessment of a solicitor's fee as costs by a merely formal, frivolous or vexatious defense. It is not essential to defeat the assessment of a solicitor's fee that the defense should be sustained, but it must be a substantial defense."

In the case of *Stortz v. Ruttiger,* 249 Ill. 494, which

was a suit for partition and in which the principal defense was a denial of the identity of the complainant which was unsuccessful, the court held: "The defense interposed by appellant was of a substantial character and was made in good faith. Under this state of the record appellee was not entitled to have her solicitor's fees taxed as costs."

The suit at bar was not an amicable one. Even before the death of the deceased, one of the appellants sought the advice of counsel for the complainant as to what the rights of appellants would be in case their father died and he declined to advise them on the ground that he had already advised Bulpitt on behalf of complainant and her mother. He recognized at that time that the interests of the parties were diverse and that he could not ethically give the advice sought. Proofs further tend to show that after the death of the deceased and before this suit was brought, a meeting of all parties was arranged for the purpose of arriving at an agreement in regard to their respective interests in the real estate, but that appellees failed to appear at the meeting. Two separate administrators of the estate of the deceased were appointed, one at the nomination of appellants and one at the nomination of appellees. These administrators employed different attorneys. After the suit was begun, appellants filed an answer and also a cross-bill. The defenses interposed to the bill by appellants while not successful were of a substantial character and were not simply formal, frivolous or vexatious. The property to be divided in this case was valuable. It consisted of a farm of 584 acres of the value of $125,560, and undivided interests in nine lots located in Taylorville and Mt. Auburn, some of which were residence properties and some business properties, and their value was fixed at $43,600, making the total value of the property sought to be partitioned $171,860. The commissioners reported that it was all subject to divi-

sion and, under the direction of the court, the dower interest of the widow and the interests of the seven heirs were set off by the commissioners. Appellants were entitled to six-sevenths of this property subject to the dower rights of the widow. They requested and the court directed to set off their undivided six-sevenths to all of them jointly. In the division of so much property among so many interests, defendants unquestionably had a right to employ counsel to see that such partition was impartially and fairly made and that their interests therein were protected. In the case of *McMullen v. Reynolds,* 209 Ill. 504, the court held: "Still, when the court can see that it is necessary for the defendants to have counsel to protect their interests and to insure a just partition of their estate, and that the solicitor of the complainant represents alone the interests of the complainant, and that it would be inequitable to require the defendants to pay their own counsel and contribute towards the payment of complainant's counsel also, the court should not tax complainant's solicitor's fee as costs and apportion the same among the parties in interest in the suit."

In the case of *Jones v. Young,* 228 Ill. 374, it was held: "But here, as in the case of *McMullen v. Reynolds, supra,* the property to be divided was valuable, as finally appraised amounting to $124,000. The parties from the first were unable to agree upon the division. Counsel were employed by appellees, long before these proceedings were begun, to protect their interests and to secure their just proportion of the properties. It would be inequitable on this record to require the defendants in the partition proceeding not only to pay their own counsel, but a part of the fees of complainant's counsel."

In our opinion it would be inequitable to compel appellants to pay six-sevenths of the solicitor's fees of complainant or any part thereof.

Counsel for complainant requested and the court allowed $2,000 as a joint compensation for his services as solicitor and as guardian *ad litem* for complainant. We know of no reason why a solicitor for a party to a suit who is not of legal age should not be appointed also the guardian *ad litem* of that party, and we know of no reason why a guardian *ad litem*, if he is a lawyer, should not act as his own solicitor. In fact, it is common practice in equitable proceedings to appoint solicitors guardians *ad litem*, but we know of no rule of law which permits in such instance, where an attorney acts both as solicitor and guardian *ad litem* for the same person, the allowance of fees in each capacity. However, if such were the rule, the parties who had to pay them as part of the costs would undoubtedly have the right to know how much was allowed as a solicitor's fee and how much as a guardian *ad litem's* fee so they could avail themselves of their right to object to the amount thereof. In this case, there is no way of telling how much the chancellor allowed for services as solicitor or how much for services as guardian *ad litem*. It is inconceivable how services performed as solicitor for complainant could be separated from those performed in the capacity of guardian *ad litem*. The minor was the complainant and while the statute permits fees to be allowed to a guardian *ad litem* in chancery cases, it has no application to cases where the minor is the complainant and the guardian *ad litem* is her solicitor. It is urged by counsel for appellees that, if he is not entitled to solicitor's fees, he should be allowed the amount for his services as guardian *ad litem*. We cannot sustain this contention, as to do so would be to indirectly allow solicitor's fees which would be inequitable.

The decree of the Circuit Court appealed from is reversed.

*Reversed.*